O

# United States District Court
# Central District of California

| | |
|---|---|
| GABRIELA CABRERA,<br><br>        Plaintiff,<br><br>    v.<br><br>CHATURONK NGAMARY, et al,<br><br>        Defendants. | Case No. 2:20-cv-03813-ODW (JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [21]** |

## I.   INTRODUCTION

Plaintiff Gabriela Cabrera moves for entry of default judgment against Defendant Chaturonk Ngamary. (Appl. for Default J. ("Appl.") 1, ECF No. 21.) For the reasons discussed below, the Court **GRANTS** Cabrera's Application for Default Judgment ("Application").[1]

## II.   BACKGROUND

Cabrera filed this action on April 27, 2020, asserting two claims arising from her November 21, 2019 visit to Ngamary's restaurant: (1) violations of Title III of the Americans with Disabilities Act ("ADA"), alleging that restrooms at Ngamary's

---

[1] Having carefully considered the papers filed in connection with the Application, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

restaurant fail to conform to the ADA standards pertaining to wheelchair users; and (2) violations of California's Unruh Civil Rights Act ("Unruh") premised on the alleged ADA violations. (Compl. ¶¶ 8, 11–12, 32–34.) The Court declined to exercise supplemental jurisdiction over Cabrera's state law claim and dismissed it without prejudice. (Order Declining Suppl. Jurisdiction 5, ECF No. 14.)

Cabrera served Ngamary with a Summons and the Complaint on May 18, 2020. (Proof of Service, ECF No. 11.) Ngamary failed to answer or otherwise respond to the Complaint, and Cabrera requested an entry of default on June 17, 2020. (Req. for Entry of Default, ECF No. 17.) The Clerk of Court entered default that same day. (Entry of Default, ECF No. 19.) Cabrera filed the present Application on July 16, 2020. (Appl. 1.)

### III. LEGAL STANDARD

A court may enter default judgment against a defendant if the plaintiff satisfies the procedural requirements set forth in Federal Rules of Civil Procedure ("Rules") 54(c) and 55, and Central District of California Local Rule ("Local Rule") 55-1. Local Rule 55-1 requires a movant to submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1; *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014). If these procedural requirements are satisfied, a district court has discretion to grant a default judgment after the clerk enters default. Fed. R. Civ. P. 55(a); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that a district court's decision to enter a default judgment is a discretionary one).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D.

Cal. 2002). Rather, in exercising its discretion, a court considers several factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th. Cir. 1986). Generally, upon entry of default by the Clerk, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

A party who has violated the ADA is liable for attorneys' fees and costs under 42 U.S.C. § 12205. Where, on motion for default judgment, a party seeks attorneys' fees and costs pursuant to a statute, those fees are calculated in accordance with the schedule provided by the Court. C.D. Cal. L.R. 55-3. A court may award attorneys' fees in excess of the schedule when the attorney makes a request at the time of the entry of default. *Id*.

## IV. DISCUSSION

### A. Procedural Requirements

Cabrera satisfies the procedural requirements for an entry of default judgment. She submits a declaration stating that: (1) the Clerk entered default against Ngamary on June 17, 2020; (2) default was entered based on the Complaint filed on April 27, 2020; (3) Ngamary is not a minor, an incompetent person, or a person in military service; (4) Ngamary is not exempt under the Servicemembers Civil Relief Act; and (5) Cabrera properly served Ngamary via first class United States mail on July 16, 2020. (Appl. Ex. 1 (Decl. of Joseph Manning Jr. ("Manning Decl.")) ¶¶ 2, 4–5, ECF No. 21-3.) Thus, Cabrera satisfies the procedural requirements of Local Rule 55-1 and Rules 54(c) and 55. *See Vogel*, 992 F. Supp. 2d at 1006.

**B.** *Eitel* **Factors**

As the procedural requirements are met, the Court considers the seven *Eitel* factors to determine whether to grant default judgment. *See Eitel* 782 F.2d at 1471–72. For the reasons discussed below, the Court finds the factors weigh in favor of granting default judgment.

*1.    Possibility of Prejudice to the Plaintiff*

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default judgment leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Ngamary elected not to participate in this action after being properly notified. (*See* Proof of Service.) Absent a default judgment, Cabrera would have no further recourse to recover for Ngamary's ADA violations. Therefore, this factor weighs in favor of default judgment.

*2.    Substantive Merits and Sufficiency of the Complaint*

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (citing *PepsiCo*, 238 F. Supp. 2d at 1175.) Although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The Court finds that Cabrera sufficiently alleges Ngamary violated the ADA. The ADA prohibits acts of discrimination "on the basis of disability the full and equal enjoyment of . . . services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a). To succeed on her claim, Cabrera must establish that: (1) she is disabled within the meaning of the ADA; (2) Ngamary owns, leases, or operates a place of public accommodation; (3) Ngamary

denied Cabrera public accommodation because of her disability; (4) the restroom in question presents an architectural barrier prohibited under the ADA; and (5) the removal of the barrier is readily achievable. *Vogel*, 992 F. Supp. 2d at 1007–08 (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)).

First, "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists walking and standing as "[m]ajor life activities." 42 U.S.C. § 12102(2)(A). Cabrera asserts that she "requires a wheelchair to ambulate." (Compl. ¶ 1.) Thus, accepting this allegation as true, Cabrera sufficiently establishes she is disabled under the ADA.

Second, the ADA lists "private entities" such as "sales . . . establishments" as "public accommodations." 42 U.S.C. § 12181(7)(E). Private entities that own, lease, or lease to others property must comply with the ADA. 42 U.S.C. § 12182(a). Here, Cabrera alleges that Ngamary owns, operates, and controls a business called Thai BBQ & Seafood Restaurant ("Thai BBQ"). (Compl. ¶3.). Thai BBQ is "a facility open to the public, a place of public accommodation, and a business establishment." (Compl. ¶¶ 9.) Therefore, taking her allegations as true, Cabrera sufficiently alleges that Ngamary owns a public accommodation.

As to elements three and four, "[a] public accommodation shall maintain . . . facilities . . . that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R § 36.211(a). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ('ADAAG')." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). The ADAAG guidelines "lay out the technical structural requirements of places of public accommodation." *Id.* (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004)). "Where toilet rooms are provided, each toilet room shall comply with [ADAAG § 603]." ADAAG § 213.2 (2010). ADAAG section 603 provides specifications for turning spaces, door swings, mirror heights, coat hooks, and

other requirements. Here, Cabrera alleges that on the date of her visit, Ngamary failed to provide restroom facilities in conformance with the ADA Standards as they relate to wheelchair users like Cabrera. (Compl. ¶ 11.) Specifically, Cabrera alleges that she experienced: a sink with exposed drainpipes, a round doorknob requiring tight grasping and turning, a door-latch lock requiring tight grasping, a towel dispenser installed too high, and a mirror installed too high. (Compl. ¶ 12.) The Court finds that Cabrera sufficiently alleges the restroom in question contained architectural barriers that denied her public accommodation due to her disability.

Fifth, "'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Although "readily achievable" requires fact-driven determinations such as the "nature and cost" of the repair, Cabrera did not receive any such information because Ngamary failed to oppose this action. (Req. for Entry of Default.) *See Spikes v. Shockley*, No. 19-cv-523-DMS-(JLBx), 2019 WL 5578234, at *3 (C.D. Cal. Oct. 28, 2019) (granting default judgment where the defendant failed to appear). Moreover, the ADAAG lists remedial measures such as "[i]nstalling accessible door hardware," "[i]nsulating lavatory pipes under sinks," "[i]nstalling a full-length bathroom mirror," and "[r]epositioning the paper towel dispenser" as examples of "readily achievable" removals of barriers. *See* 28 C.F.R § 36.304(b).

Furthermore, Cabrera alleges that the barriers are "easily removed without much difficulty or expense." (Compl. ¶ 23.) Such allegations are sufficient to satisfy her burden to produce evidence that a suggested method of barrier removal is readily achievable. *See Vogel*, 992 F. Supp. 2d at 1010–11 (citing *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001)) ("[Plaintiff's] allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden of production."). Finally, Cabrera alleges that "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." (Compl. ¶ 23.) Taking Cabrera's claims as true, she

sufficiently alleges that the removal of Ngamary's ADA violations is readily achievable. Therefore, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. *The Sum of Money at Stake*

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of [the] Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of [the] defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, the Court declined to exercise supplemental jurisdiction over Cabrera's state law claim, and the ADA offers only injunctive relief to remedy easily removable architectural barriers to access. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). There are no monetary damages at stake. Thus, this factor weighs in favor of granting default judgment.

### 4. *Possibility of Dispute*

The fifth *Eitel* factor considers the possibility of a dispute over material facts. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, as Ngamary failed to oppose the Application, no factual dispute exists because the allegations in the Complaint are presumed true. *See Vogel*, 992 F. Supp. 2d at 1013. Thus, this factor weighs in favor of default judgment.

### 5. *Possibility of Excusable Neglect*

The sixth *Eitel* factor considers whether Ngamary's default is the result of excusable neglect. *Eitel*, 782 F.2d at 1470. No facts before the Court indicate that Ngamary's default is due to excusable neglect. Cabrera served Ngamary with the Summons and Complaint on May 18, 2020. (*See* Proof of Service.) Additionally, Cabrera served Ngamary with notice of this Application on July 16, 2020. (Manning

Decl. ¶ 5.) Ngamary did not respond to the Summons or to the notice of this Application. Thus, the Court finds Ngamary's default is not due to excusable neglect.

### 6. *Policy Favoring Decision on the Merits*

The seventh and final *Eitel* factor recognizes that "default judgments are ordinarily disfavored. Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where a defendant fails to answer a complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Ngamary elected not to respond to the Summons and Complaint (*see* Req. for Entry of Default), thereby rendering a decision on the merits impracticable. Thus, this factor weighs in favor of default judgment.

In summary, upon balance of the *Eitel* factors, the Court determines that default judgment should be entered against Ngamary. Next, the Court addresses Cabrera's request for remedies and her request for attorneys' fees and costs.

## C. Remedies

### 1. *Actual and Statutory Damages*

Cabrera seeks statutory damages not less than $4,000 for each offense pursuant to California Civil Code section 52(a). (Compl. 8, Prayer.) However, such damages are derived exclusively from Cabrera's Unruh claim, which the Court has already dismissed. Thus, Cabrera's request for actual and statutory damages is **DENIED**.

### 2. *Injunctive Relief*

Cabrera also seeks injunctive relief pursuant to 42 U.S.C. § 12188(a)(2). (Compl. Prayer.) Thus, Cabrera must show that Ngamary has violated the ADAAG. *See Vogel*, 992 F. Supp. 2d at 1015. For ADA violations, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ." 42 U.S.C. § 12188(a)(2). There are no further prerequisites for injunctive relief where, as here, "an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Vogel*, 992 F. Supp. 2d at 1015 (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D.

Cal. 2011)). "Thus, injunctive relief is proper when architectural barriers at [Ngamary]'s establishment violate the ADA and the removal of the barriers is readily achievable." *Id*.

Here, Cabrera has established a valid ADA discrimination claim under 42 U.S.C. § 12188(a)(2). Certain architectural barriers at Ngamary's property prevented Cabrera from the full and equal enjoyment of Ngamary's restaurant establishment. Injunctive relief is therefore appropriate. Thus, Ngamary is **ORDERED** to remove all architectural barriers specifically identified in Cabrera's Complaint for which removal is readily achievable. *See Moreno v. La Curacao*, 463 F. App'x 669 (9th Cir. 2011) (finding that because the defendant's "retail establishment" was a public accommodation and the removal of barriers was "readily achievable," the plaintiff was "entitled to injunctive relief"); *Vogel,* 992 F. Supp. 2d at 1015–16 (same).

### D. Attorneys' Fees and Costs

Cabrera seeks $4,106 in attorneys' fees and $538 in costs. (Manning Decl. ¶¶ 7–8.) As Cabrera's ADA claim is meritorious, Cabrera is the prevailing party and is therefore entitled to recover attorneys' fees under 42 U.S.C. § 12205. Cabrera may also recover costs as provided in 29 U.S.C. § 1920, Rule 54(d)(1), and Local Rule 54-2.

In an application for default judgment, where attorneys' fees are sought pursuant to a statute, fees are generally calculated according to the schedule provided by the Court. C.D. Cal. L.R. 55-3. Attorneys may request fees in excess of the schedule, as Cabrera's attorneys have done here. C.D. Cal. L.R. 55-3. When a party makes such a request, "the court is obliged to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018). The "lodestar method" multiplies the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts should exclude hours that are excessive, redundant, or not reasonably expended. *Id.* at 434. It is in the Court's discretion to determine the reasonableness of the fees requested. *Id.* at 433. "[A] court may consider

a number of pertinent factors in determining the reasonableness of an attorney's fees award." *MGSY Corp. v. LiveUniverse, Inc.*, No. 09-CV-0570 GAF (AGRx), 2010 WL 11596708, at *9 (C.D. Cal. Feb. 25, 2010) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[2]

Here, Cabrera's attorneys fail to justify their full billing rates. Cabrera's lead attorney, Manning, seeks $450 per hour for his work, and his unnamed associate attorney seeks $375 per hour. (Manning Decl. ¶ 7.) Manning declares that both rates are within the median market for attorneys with similar years of experience; however, he fails to justify his assertion with any evidence other than his self-serving declaration. (Manning Decl. ¶ 7.) Furthermore, while represented by the same firm, Cabrera and her attorneys have filed approximately twenty similar ADA cases within the last year, at least five of which were filed on the same day as this case. Cabrera's cases include nearly identical complaints and subsequent filings. Also, in the past year, Cabrera's attorneys filed hundreds of similar ADA cases in this District using "carbon-copy complaints and 'entirely boilerplate' litigation." *See Tate v. Deoca*, No. 14-cv-08738-SJO (MRWx), 2018 WL 5914220, at *8 (C.D. Cal. July 31, 2018) (citing cases and cautioning against awarding counsel a windfall for such copy-and-paste work). The Court acknowledges the time that was necessary to prepare filings in this matter and to investigate and identify the proper defendants, but this litigation is not particularly complex or laborious, nor has it been litigious as Defendant failed to even answer the Complaint. Indeed, this case has proceeded in a straightforward matter over the course of only a few months. Finally, nothing indicates that Cabrera's attorneys have been

---

[2] The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Quesada*, 850 F.2d at 539 n.1.

precluded from accepting other employment due to the acceptance of this case. *See Quesada*, 850 F.2d at 539 n.1.

Considering the redundancy of work involved, counsel's familiarity with Cabrera, counsel's experience in the area of law, and the straightforward nature of this case, the Court reduces the lodestar by 50% and **awards $2,053 in attorneys' fees**. *See Langer*, 2019 WL 6332167, at *8 (reducing requested fees by 50% under similar circumstances); *Tate*, 2018 WL 5914220, at *8 (same).

Finally, the Court accepts Manning's declaration that Cabrera incurred litigation expenses of $538. (Manning Decl. ¶ 8.) Thus, the Court **awards costs of $538**.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cabrera's Application for Default Judgment and **AWARDS injunctive relief**. The Court further **AWARDS $2,053 in attorneys' fees** and **$538 in costs**. The Court will issue Judgment.

**IT IS SO ORDERED.**

October 6, 2020

_____
             **OTIS D. WRIGHT, II
     UNITED STATES DISTRICT JUDGE**